**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| JOHN M. TOWNSEND | ) | |
| | ) | 3:06-cv-0269-LRH (VPC) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| JAMES BACA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | December 19, 2007 |
| —————————————————— | ) | |

This Report and Recommendation is made to Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion to dismiss (#38). Plaintiff opposed (#44) and defendants replied (#46). The court has thoroughly reviewed the record and the motions and recommends that defendants' motion to dismiss (#38) be granted in part and denied in part.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff John M. Townsend ("plaintiff"), acting *in pro se*, is currently a prisoner at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#28). Plaintiff brings his first amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First Amendment rights to freedom of speech and freedom from retaliation while incarcerated at Nevada State Prison ("NSP") (#26). *Id.* Plaintiff names as defendants James Baca, NSP Associate Warden; Michael Budge, former NSP Warden; Coleman, former NSP Associate Warden; Michael Cruse, NSP Correctional Officer; Kenneth Grafton, NSP Caseworker; Sean LaGier, NSP Correctional Officer; Sergeant Frank Sherman, NSP Correctional Officer; Elizabeth Walsh, NSP Caseworker; and John and Jane Does 1 – 21. *Id.*

In count I, plaintiff states that in May 2004, he submitted twelve "Inmate Book Requests." *Id.* Plaintiff alleges that defendant Baca denied six of his requests for improper reasons, and failed to return the other six requests. *Id.* Plaintiff claims that defendants Grafton and Walsh then came to plaintiff to request "samples" of materials plaintiff already had in his possession, and that

1   even though they promised to return the materials, they did not. *Id*. Plaintiff alleges that the next

2   day, defendants Cruse and LaGier seized the remaining materials from his cell and refused to

3   provide plaintiff with an "unauthorized property notice" pursuant to prison regulations. *Id*.

4   Plaintiff claims that defendants took these actions in retaliation for his use of the grievance

5   process. *Id*.

6       In count II, plaintiff alleges that his firebox was destroyed when he arrived at NSP in

7   February 2004. *Id*. He filed a grievance, which plaintiff states was settled to his satisfaction. *Id*.

8   Plaintiff claims that defendants thereafter failed to honor the settlement, so he re-filed the original

9   grievance and filed a second grievance to resolve the failed settlement. *Id*. Plaintiff states that

10  he then filed two more grievances – one concerning defendants' seizure of his property without

11  giving him an "unauthorized property" notice, and another concerning defendants' refusal to

12  provide him with information from the mail log. *Id*. Plaintiff alleges that in retaliation for

13  accessing the grievance process, defendants issued him a false disciplinary charge for abusing the

14  grievance process and put him in "the hole" for thirty days. *Id*.

15      In count III, plaintiff alleges that in June 2004, defendant Sherman seized his Episcopal

16  Book of Common Prayer and his copy of the Holy Bible, allegedly because hard cover books are

17  prohibited. *Id*. Plaintiff claims that both books were "grandfathered" in. *Id*. Further, plaintiff

18  claims that defendant Sherman did not seize his books until months after he arrived at NSP and

19  began using the grievance process. *Id*. Finally, plaintiff additionally alleges that the hard cover

20  prohibition policy violates his constitutional rights. *Id*.

21      The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff

22  appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit

23  of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*

24  *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

25                          **II. DISCUSSION & ANALYSIS**

26      **A. Discussion**

27          **1. Motion to Dismiss Standard**

28      When considering a motion to dismiss for failure to state a claim upon which relief can

2

1   be granted, all material allegations in the complaint are accepted as true and are construed in the

2   light most favorable to the non-moving party.  *Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir.

3   1994); *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980).  "As a general rule, 'a district

4   court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"

5   *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001) (*quoting Branch v. Tunnell*,

6   14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa*

7   *Clara*, 307 F.3d 1119 (9th Cir. 2002)).  However, Rule 12 provides

> 8   If, on a motion asserting the defense numbered (6) to dismiss for
>     failure of the pleading to state a claim upon which relief can be
> 9   granted, matters outside the pleading are presented to and not
>     excluded by the court, the motion shall be treated as one for
> 10  summary judgment and disposed of as provided in Rule 56, and all
>     parties shall be given reasonable opportunity to present all material
> 11  made pertinent to such a motion by Rule 56.

12  Fed.R.Civ.P. 12(b)(6).  Notwithstanding this rule, "a motion to dismiss is not automatically

13  converted into a motion for summary judgment whenever matters outside the pleadings happen

14  to be filed with the court."  *North Star Intern. v. Arizona Corp. Com'n*, 720 F.2d 578, 582 (9th

15  Cir. 1983).  A motion filed with extraneous materials is to be treated as a motion for summary

16  judgment only if the court relies on the material.  *Swedberg v. Marotzke*, 339 F.3d 1139, 1143-44

17  (9th Cir. 2003).  Conversion to summary judgment is at the discretion of the court and the court

18  must take some affirmative action before conversion is effected.  *Id*. at 1144.

19          **2. Summary Judgment Standard**

20          Summary judgment allows courts to avoid unnecessary trials where no material factual

21  disputes exist.  *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th

22  Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in

23  dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(C).

24  In deciding whether to grant summary judgment, the court must view all evidence and any

25  inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi*

26  *v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In inmate cases, the courts must

> 27  [d]istinguish between evidence of disputed facts and disputed
>     matters of professional judgment.  In respect to the latter, our
> 28

> inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006) (citations omitted). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### 3. First Amendment Retaliation

Prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004). Retaliation claims must be evaluated in light of the deference accorded to prison officials. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id*. at 806; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). The Ninth Circuit has recognized that "timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt*, 65 F.3d at 808.

4

### B.   Analysis

As the parties submit evidence with their motions, the court converts defendants' motion to dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

### 1. Count I

Plaintiff alleges that defendants denied his book requests and removed reading materials from his cell in retaliation for his use of the grievance process (#26).  Defendants argue that they properly seized plaintiff's reading materials based on the determination that the materials raised security concerns, not in retaliation for plaintiff's protected conduct (#38, p. 11).

Plaintiff lists the materials he requested, only one of which appears to be a book, and all of which appear to involve information about camping and backpacking, and information and data about alternative electric and/or energy systems, including, but not limited to, solar energy, lamps, batteries, and marine energy (#44, p. 3).  Plaintiff claims that he only needed to submit a book request for one of the twelve items, and that he has since received six of the items by requesting them through the mail. *Id.* Plaintiff further contends that he had properly obtained the seized items through the mail, and that two of the items have since been approved to be replaced. *Id.*

Defendants submit an affidavit from defendant Baca which states that defendant Baca determined that plaintiff's request was for inappropriate materials that would raise security concerns (#38, Exhibit A, ¶ 5).  Defendant Baca further affirms that he ordered the materials in plaintiff's cell to be removed because they created the same security concerns. *Id.* at ¶ 6. Defendant Grafton submits an affidavit stating that at the request of defendant Baca, he removed "certain reading materials" from the plaintiff's cell because they had been determined to be a security risk (#38, Exhibit B, ¶ 4).

Plaintiff submits an affidavit stating that because he worked in electronics shops and maintenance departments at other institutions in the mid-1990s, he cannot be considered a

---

[1] Plaintiff had notice that defendants' motion to dismiss could be treated as a motion for summary judgment, as the court issued a *Klingele* order on June 20, 2007 (#39).

1  security risk (#44, Plaintiff's Affidavit, ¶¶ 4).  Plaintiff affirms that he has had similar materials

2  in the past, even at NSP when it was a maximum security prison.  *Id*. at ¶ 5.  Plaintiff also states

3  that he is currently receiving such materials, and that the ESP Warden has allowed him to have

4  such materials.  *Id*. at ¶¶ 6-7.  Finally, plaintiff affirms that he was a teacher's aide in the

5  protective segregation section of the Coal Canyon Adult High School industrial electronics class

6  from 1996-2000, and also taught a "WNCC Computer Repair Upgrade" class.  *Id*. at ¶ 8.

7        Viewing the evidence in the light most favorable to plaintiff, the court concludes that there

8  is an issue of fact as to whether defendants removed plaintiff's materials from his cell for security

9  reasons or in retaliation for plaintiff accessing the grievance process.  Defendants contend that

10  since plaintiff cannot order anything from any of the catalogs he possessed, there is no reason for

11  him to possess them.  This is irrelevant to the issue of whether defendants removed the materials

12  in retaliation for plaintiff's use of the grievance process.  Further, although it is true that the court

13  must defer to defendants' professional judgement on issues of safety and security, in this case,

14  defendants have not informed the court what those concerns are.  Defendants merely present the

15  court with a blanket statement that "certain" materials were removed based on a concern about

16  a "security risk."  Plaintiff affirms that he currently has such materials in his possession at ESP,

17  and that he had in the past possessed such materials without problem until he began to use the

18  grievance process to complain about defendants' behaviors.  Based on the evidence currently

19  before the court, the court concludes that an issue of fact exists as to whether defendants acted

20  with retaliatory motive.  The court denies defendants' motion as to count I.

21        **2. Count II**

22        Plaintiff alleges that his firebox was destroyed when he arrived at NSP, and that after he

23  attempted to resolve the issue through the grievance process, defendants issued him a false

24  disciplinary charge (#26).  Defendants argue that they had a legitimate penological purpose in

25  issuing plaintiff a notice of charges for abusing the grievance process because plaintiff admits that

26  he filed four grievances regarding his firebox (#38, p. 13; #46, p. 5).

27        Administrative Regulation ("AR") 740, which governs the inmate grievance process,

28  states that inmates are prohibited from "knowingly, willingly or maliciously filing frivolous or

6

vexatious grievances" (#38, Exhibit C, pp. 7-8).   Upon suspicion of abusing the grievance process, the inmate's grievance coordinator is notified. *Id*. After reviewing the documentation, the grievance coordinator forwards the case to the warden with a recommendation as to whether to issue a notice of charges. *Id*. The warden then reviews the documentation and forwards the case to the Assistant Director of Operations, who is the final decision maker and the only individual who may issue a notice of charges. *Id*. AR 740 states that "a conduct violation of this nature shall not constitute a form of retaliation." *Id*., p. 8.

Defendant Baca affirms that NDOC policy making it an offense to abuse the grievance procedure serves a legitimate purpose and that it is meant to prevent frivolous, repetitive and unnecessary grievances (#38, Exhibit A, ¶¶ 13-14).   Defendant Grafton states that plaintiff was written up and faced disciplinary charges for abusing the grievance process, and that he was provided with the necessary materials to repair his fire retardant box (#38, Exhibit B, ¶¶ 6-7). Defendants assert that because AR 740 "pertinently points out" that a notice of charges for filing improper grievances does not constitute retaliation, they have not retaliated against plaintiff (#46, p. 8).

Simply because the regulation so states does not mean that defendants did not retaliate against plaintiff.  The court agrees that there is a legitimate penological purpose in making it a chargeable offense for an inmate to abuse the grievance process.  However, defendants present no evidence that plaintiff abused the process in this particular case. Defendants submit defendant Grafton's statement affirming that plaintiff abused the grievance process; however, defendant Grafton fails to explain *how* plaintiff did so.  Defendants argue that the mere fact that plaintiff admits to filing four grievances with relation to the firebox incident means that plaintiff abused the process.  However, plaintiff claims that he filed grievances for proper purposes, namely to exhaust his administrative remedies as to different issues surrounding the destruction of his firebox, such as the original destruction, the failed settlement, defendants' alleged failure to give plaintiff and unauthorized property notice, and defendants' alleged refusal to allow plaintiff to view the mail log.  There is no documentation before the court concerning the grievances or the notice of charges; therefore, it is impossible to tell whether, in this specific case, there was a

1   legitimate purpose for issuing the notice of charges.  Viewing the issues in the light most

2   favorable to plaintiff, an issue of fact exists as to whether plaintiff's grievances were proper and

3   whether defendants acted with retaliatory motive in issuing the notice of charges.  The court

4   denies defendants' motion as to count II.

5   **3. Count III**

6   Plaintiff alleges that defendant Sherman improperly seized his hard cover copies of the

7   Episcopal Book of Common Prayer and the Holy Bible in retaliation for accessing the grievance

8   process (#26).  Plaintiff additionally challenges the general prohibition on hard cover books.  *Id.*

9   Prisoners retain First Amendment rights that are not "inconsistent with [their] status as

10  a prisoner or with the legitimate penological objectives of the corrections system." *Jones v. North*

11  *Carolina Prisoners' Labor Union*, 433 U.S. 119, 129 (1977).  A challenge to a prison regulation

12  is governed by *Turner v. Safely*, 482 U.S. 78 (9th Cir. 1987).  *Turner* sets out a four-part test: (1)

13  whether there is a "'valid, rational connection' between the prison regulation and the legitimate

14  governmental interest put forward to justify it"; (2) whether there are "alternative means of

15  exercising the rights that remain open to prison inmates"; (3) what "the impact accommodation

16  of the asserted constitutional right will have on guards and other inmates, and on the allocation

17  of prison resources generally"; and, (4) whether the "absence of ready alternatives is evidence of

18  the reasonableness of a prison regulation." *Turner*, 482 U.S. at 89-90.  As to the first element of

19  the test, the *Turner* Court found that in the First Amendment context it is important to inquire

20  whether the restriction operates in a "neutral fashion, without regard to the content of the

21  expression." *Id.* at 90.

22  Defendant Baca affirms that NDOC policy prohibiting hard cover books is based on the

23  fact that inmates hide contraband within hard cover books, and use the books as protective gear

24  in fights with other inmates and against prison officials who need to deploy non-lethal weapons

25  to properly gain compliance of combative or disruptive inmates (#38, Exhibit A, ¶11).  Defendant

26  Baca further affirms that there was no "grandfathering" exception to the hard cover book

27  prohibition.  *Id.* at ¶ 12.  Defendant Sherman affirms that plaintiff was given the option of

28  replacing his hard cover books with copies in soft cover, but that plaintiff refused to do so (#38,

1   Exhibit D, ¶ 4).  Plaintiff admits that defendants offered him the opportunity to replace his hard

2   cover books with soft cover copies (#44, p. 5).

3          Even viewing the evidence in the light most favorable to plaintiff, the court concludes that

4   defendants have established a legitimate penological purpose both for the regulation at issue, and

5   for removing plaintiff's hard cover books from his cell.  The evidence presented reveals that there

6   is a rational connection between banning hard cover books and protecting the safety of

7   correctional officers and inmates.  *Turner*, 482 U.S. at 89-90; *see also Bell v. Wolfish*, 441 U.S.

8   520 (1979) (calling a restriction on hard cover books a "rational response by prison officials to

9   an obvious security problem" and stating "It hardly needs to be emphasized that hardback books

10  are especially serviceable for smuggling contraband into an institution; money, drugs, and

11  weapons easily may be secreted in the bindings").  Concerning the second *Turner* factor, plaintiff

12  admits that he was offered the opportunity to exchange his hard cover copies for soft cover

13  copies.[2]  Since defendants' policy offers a valid alternative, the second factor is satisfied.  The

14  third *Turner* factor is also satisfied in that if defendants accommodated plaintiff's request to allow

15  inmates to possess hard cover books, there would be security concerns because plaintiff or other

16  inmates could use the books as weapons, protection, or to hide contraband.  Finally, the parties

17  present no other alternative than an outright ban on hard cover books.  Importantly, the content

18  of plaintiff's books is not prohibited, just the hard cover, and the court perceives no difference

19  between a hard cover copy and a soft cover copy.

20         The evidence reveals that the rule is neutrally applied to all inmates and all books.  That

21  plaintiff was given the opportunity to replace his books with soft cover copies indicates that

22  defendants were protecting the safety of the institution rather than retaliating against plaintiff.

23  The court grants defendants' motion to dismiss count III.[3]

24  _____

25         [2] Plaintiff mentions in his opposition that the offer to exchange his books was not reasonable because
    there was a $7.50 charge for each book to do so, and although plaintiff was indigent at that time, defendant

26  Sherman would not allow plaintiff to use a brass slip to convert his books (#44, p. 5).  Plaintiff offers no
    evidence, including an affidavit, to support this statement.

27
           [3] Plaintiff also claims in his opposition that because inmates have a right to freely exercise their

28  religion, defendants should have allowed him the use of a brass slip to purchase soft cover copies of the

### 4. Qualified Immunity

Defendants additionally argue that they are entitled to qualified immunity (#38, p. 6).[4] The defense of qualified immunity protects state officials sued in their individual capacities unless the conduct complained of violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th Cir. 2001). A qualified immunity analysis begins with a threshold question of whether, based upon facts taken in the light most favorable to the party asserting the injury and in light of such clearly established law, an official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right was violated, the court need not inquire further. *Id.* However, if a constitutional violation occurred, the court's second inquiry is whether the official could nevertheless have reasonably, but mistakenly, believed that his or her conduct did not violate a clearly established constitutional right. *Id.* If there is a material dispute as to the facts regarding whether the actions of the defendants violated a constitutional right, the case must proceed to trial. *LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000), *citing Act-Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

As noted above, inmates have a constitutional right to access to the courts, including through the prison grievance process, and prison officials may not retaliate against them for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). The court concluded above that issues of fact exist as to whether defendants seized plaintiff's reading materials and issued a false notice of charges in retaliation for accessing the grievance process. The court denies qualified immunity for defendants as to counts I and II.

### 5. Official Capacity Immunity

Defendants additionally argue that plaintiff's claims brought against defendants in their official capacities should be dismissed. The Supreme Court has held that a suit against a state

---

books (#44, pp. 5-6). As plaintiff did not bring a religion claim, the court disregards this argument.

[4] As the court has dismissed count III, the qualified immunity argument is applicable only to counts I and II.

official in his or her official capacity is not suit against that official, but rather a suit against the official's office; therefore, an official acting in his or her official capacity is not a "person" under section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). However, when a state official is sued in his official capacity for prospective injunctive relief, he is considered a "person" for the purposes of section 1983. *Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997). Plaintiff has sued all defendants in their official capacities, *see* #26, pp. 2-3, and also requests certain prospective injunctive relief. *Id*., p. 9. The court grants the defendants' motion as to all claims against defendants in their official capacities for money damages.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

1. an issue of fact exists in count I as to whether defendants acted with retaliatory motive in denying plaintiff certain reading materials and in removing plaintiff's reading materials from his possession;

2. an issue of fact exists in count II as to whether plaintiff's grievances regarding the destruction of his firebox were proper and whether defendants acted with retaliatory motive in issuing a notice of charges for abusing the grievance process;

3. defendants' policy banning hard cover books to protect the security of the institution is rationally related to legitimate penological interests, is content neutral, and is neutrally applied. Since defendants offered plaintiff a valid alternative in replacing his hard cover books with soft cover books, the court concludes there was no retaliatory motive;

4. defendants are not entitled to qualified immunity because issues of fact exist in counts I and II as to whether defendants violated plaintiff's constitutional rights; and

5. defendants cannot be sued in their official capacities for money damages.

As such, the court recommends that defendants' motion to dismiss (#38) be **GRANTED IN PART** as to count III and defendants in their official capacities for money damages, and **DENIED IN PART** as to counts I and II.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days

of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#38) be **GRANTED IN PART** as to count III and defendants in their official capacities for money damages, and **DENIED IN PART** as to counts I and II.

**DATED:** December 19, 2007.

_____
**UNITED STATES MAGISTRATE JUDGE**